UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDMUND J. MANSOR, and<br>ROBERTA M. MANSOR,<br><br>                    Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>                    Defendant. | )<br>) Civil Action No. 1:12-cv-10544-JGD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Beth I.Z. Boland, BBO #553654
Courtney Worcester, BBO #643180
Redi Kasollja, BBO #673557
FOLEY & LARDNER LLP
Boston, MA 02199
(617) 342-4000
bboland@foley.com
cworcester@foley.com
rkasollja@foley.com

*Counsel for Defendant JPMorgan Chase
Bank, N.A.*

4813-3729-7470

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................... 2

ARGUMENT ........................................................................................................... 3

    A.    Plaintiffs Have Failed to Demonstrate Good Cause to Amend the Complaint Twenty-One Months After the Court-Imposed Deadline .................... 3

    B.    The Proposed Amendment Would Be Futile Because the Civil Conspiracy Claim Fails as a Matter of Law .............................................................. 4

        1.    Standard of Review ................................................................................ 4

        2.    Civil Conspiracy Is Separate and Distinct from Aiding and Abetting ............................................................................................. 5

        3.    The Proposed Civil Conspiracy Claim Fails as a Matter of Law Because Chase Owed No Duty to the Investors ........................................ 7

        4.    The Proposed Civil Conspiracy Claim Fails Because Plaintiffs Have Failed to Allege a Conspiratorial Agreement With Particularity .......................................................................................... 9

        5.    The Proposed Civil Conspiracy Claim Fails Under the Law of the Case Doctrine ...................................................................................... 12

        6.    Plaintiffs Cannot Rely on the Wise Affidavit, Which Is Inadmissible ........................................................................................ 13

CONCLUSION ...................................................................................................... 17

REQUEST FOR HEARING ..................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ahanotu v. Massachusetts Turnpike Auth.*,
  466 F. Supp. 2d 378 (D. Mass. 2006) ...............................................................10, 11

*In re American Principals Holdings, Inc. Securities Litig.*,
  M.D.L. No. 653, 1987 WL 39746 (S.D. Cal. July 9, 1987)................................................7, 12

*Appley v. West*,
  No. 84 C 6025, 1985 WL 4884 (N.D. Ill. Dec. 12, 1985) ........................................................8

*Barthelmes v. Kimberly-Clark Corp.*,
  No. 13-cv-30164-MGM, 2015 WL 1431156 (D. Mass. 2015)................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................9

*Briggs v. Boat/U.S., Inc.*,
  No. 12-cv-11795-DJC, 2014 WL 4662305 (D. Mass. 2014)................................................10

*Buba v. Deutsche Bank Nat'l Tr. Co. Americas*,
  No. 16-cv-10421-PBS, 2016 WL 2626861 (D. Mass. May 6, 2016) ....................................11

*City of Omaha Employees Betterment Ass'n v. City of Omaha*,
  883 F.2d 650 (8th Cir. 1989) ..................................................................................10

*Eastern Fisheries, Inc. v. Airgas USA, LLC*,
  166 F. Supp. 3d 124 (D. Mass. 2016) ......................................................................3

*Farrah ex rel Estate of Santana v. Gondella*,
  725 F. Supp. 2d 238 (D. Mass. 2010) ......................................................................10

*In re Evans*,
  467 B.R. 399 (Bankr. S.D. Miss. 2011)......................................................................6

*Flanders v. Garlock, Inc.*,
  No. cv-2002-178, 2003 WL 22697241 (S.D. Ga. Aug. 11, 2003)...........................................8

*Grant v. John Hancock Mut. Life Ins. Co.*,
  183 F. Supp. 2d 344 (D. Mass. 2002) ......................................................................9

*Green v. Parts Distribution Xpress, Inc.*,
  No. CIV.A. 10-11959-DJC, 2011 WL 5928580 (D. Mass. Nov. 29, 2011) ...............................6

4813-3729-7470

*Hallal v. Vicis Capital Master Fund Ltd.*,
No. 12-cv-10166-NMG, 2013 WL 1192384 (D. Mass. 2013) .................................11

*Hashimoto v. Clark*,
264 B.R. 585 (D. Ariz. 2001).............................................................................8

*James R. Snyder Co. v. Edward Rose & Sons, Inc.*,
546 F.2d 206 (6th Cir. 1976) ...........................................................................9

*Kay v. New Hampshire Democratic Party*,
821 F.2d 31 (1st Cir. 1987)..............................................................................4

*Mansor v. JPMorgan Chase Bank, N.A.*,
No. 12-cv-10544-JGD, 2016 WL 1676482 (D. Mass. Apr. 26, 2016) ................5, 8, 9, 12, 13

*Moss v. Camp Pemigewassett, Inc.*,
312 F.3d 503 (1st Cir. 2002).............................................................................9

*Naser Jewlers, Inc. v. City of Concord, N.H.*,
538 F.3d 17 (1st Cir. 2008)..............................................................................12

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................8

*Panthera Rail Car LLC v. Kasgro Rail Corp.*,
985 F. Supp. 2d 677 (W.D. Pa. 2013)................................................................8

*Payton v. Abbott Labs.*,
512 F. Supp. 1031 (D. Mass. 1981) ...........................................................6, 7, 8

*Pereira v. United Jersey Bank, N.A.*,
21 B.R. 644 (S.D.N.Y. 1996).............................................................................8

*Pittman by Pittman v. Grayson*,
149 F.3d 111 (2d Cir. 1998).............................................................................6

*Setterlund v. Potter*,
597 F. Supp. 2d 167 (D. Mass. 2008) ...............................................................16

*Siupa v. Astra Tech, Inc.*,
No. 10-cv-10525-TLS, 2013 WL 212613 (D. Mass. Jan. 18, 2013) ........................4

*Trudel v. SunTrust Bank*,
No. 15-cv-1966 (JEB), 2016 WL 7191560 (D.D.C. Dec. 12, 2016) ......................11

*Tutor Perini Corp. v. Bank of Am. Securities LLC*,
No. 11-cv-10895-NMG, 2013 WL 5376023 (D. Mass. Sep. 24, 2013) ..............10, 11

iii

*United States v. Lang,*
  589 F.2d 92 (2d Cir. 1978)...................................................................................16

*United States v. Williams,*
  927 F.2d 95 (2d Cir. 1991)...................................................................................17

*In re Welding Fume Prods. Liab. Litig.,*
  526 F. Supp. 2d 775 (N.D. Ohio 2007)................................................................10

*Wells Fargo Bank, N.A. v. Old Republic Title Ins. Co.,*
  413 F. App'x 569 (4th Cir. 2011)...........................................................................9

*Windham v. JPMorgan Chase Bank, N.A.,*
  No. 15-cv-12809-FDS, 2016 WL 1642582 (D. Mass. Apr. 25, 2016) ....................5

**State Cases**

*Baker v. Wilmer Cutler Pickering Hale and Dorr LLP,*
  No. 1854-cv-01586-BLS-2, 33 Mass. L. Rptr. 267 (Mass. Super. Ct. Feb. 17,
  2016) . ..................................................................................................................10

*Bartle v. Berry,*
  80 Mass. App. Ct. 372 (2011).................................................................................5

*Byrnes v. Lukes,*
  No. 2009-cv-1403, 26 Mass. L. Rptr. 354 (Mass. Super. Ct. Nov. 3, 2009) ...........10

*Cusick v. Carver,*
  67 Mass. App. Ct. 1110 (2006)...............................................................................5

*Firestone Steel Prods. Co. v. Barajas,*
  927 S.W.2d 608 (Tex. 1996)...................................................................................8

*Hunt v. Air Prods & Chems.,*
  No. 052-9419, 2006 WL 1229082 (Mo. Cir. Ct. Apr. 20, 2006)..............................8

*Kurker v. Hill,*
  44 Mass. App. Ct. 184 (1998).................................................................................6

*Lindsay v. Lockwood,*
  163 Misc.2d 228, 625 N.Y.S.2d 393 (1994) ............................................................6

*Lucas v. Allen,*
  1997 Mass. App. Div. 9 (Dist. Ct. 1997) .................................................................6

*Mosley v. Garlock, Inc.,*
  No. 2002CV59552, 1997 Mass. App. Div. 9 (Dist. Ct. 1997)..................................8

4813-3729-7470

*Needleman v. Clancy*,
74 Mass. App. Ct. 1119 (2009) ..................................................................6

**Statutes**

28 U.S.C. § 2255 ........................................................................................16

Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C.
§ 1821(d)(13)(D)(ii) ............................................................................1, 12

**Other Authorities**

16 Am. Jur. 2d *Conspiracy* § 55 (2010) ....................................................8

15A C.J.S. *Conspiracy* § 8 (2010) .............................................................8

U.S. Const., Fifth Amendment ..............................................................1, 16

Fed. R. Civ. P. 8 .......................................................................................10

Fed. R. Civ. P. 9 .............................................................................5, 10, 12

Fed. R. Civ. P. 12 .......................................................................................5

Fed. R. Civ. P. 15 .......................................................................................3

Fed. R. Evid. 803 .....................................................................................16

Fed. R. Evid. 804 .....................................................................................17

N. Combs, *Civil Aiding and Abetting Liability*, 58 Vand. L. Rev. 241, 254-259
(Jan. 2005) ..............................................................................................6

Restatement (Second) of Torts § 876 .........................................................6

v

In their Motion for Leave to File Third Amended Verified Complaint (the "Motion to Amend"), Plaintiffs seek to add a new count for civil conspiracy nearly five years after filing this action in 2012.  Plaintiffs' Motion comes too late:  not only does it come 21 months after the deadline for filing an amended complaint, but Plaintiffs have shown no good cause why they waited so long.   While Plaintiffs contend the amendment is based on "newly-discovered information," they fail to cite a single additional fact they have learned since filing the Second Amended Complaint ("SAC") to justify their delay.   The proposed third amended complaint ("TAC") contains no new material factual allegations, and Plaintiffs themselves admit their conspiracy claim "is based on the same facts" as their existing claim for aiding and abetting.

The proposed amendment would also be futile, because the proposed civil conspiracy claim fails for two reasons:  first, because Chase owes no duty to Plaintiffs or the putative class members; and second because Plaintiffs have failed to plead with particularity that Chase had an agreement with Millennium Bank to defraud its investors.  Further, the civil conspiracy claim is barred because it would sweep in conduct pre-dating Chase's September 25, 2008 acquisition of Washington Mutual ("WaMu"), which this Court has already ruled would be barred under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(13)(D)(ii) ("FIRREA").  Tellingly, Plaintiffs support their Motion with an inadmissible affidavit, obtained under questionable circumstances prior to the filing of the SAC, of a witness who will refuse to testify and will instead invoke the Fifth Amendment and thus deprive Chase the opportunity to cross-examine the witness.  Plaintiffs' latest attempt to litigate this matter on a piecemeal basis, using flawed legal and factual support, should not be allowed.

## BACKGROUND

This action commenced almost five years ago in March of 2012. Since then, Plaintiffs have amended their original complaint twice. The court dismissed the First Amended Complaint on December 10, 2014 and gave Plaintiffs one final chance to replead by January 9, 2015. (Dkt. No. 328 at pp. 34-35.) After two separate requests for extensions, the Court ordered Plaintiffs to file the SAC by March 13, 2015. (*See* Dkt. Nos. 330, 332, 339-340.) In the meantime, Plaintiffs' counsel, Keith Miller, interviewed two of the Millennium Bank principals, William Wise and Jacquline Hoegel, in February 2015, and interviewed Wise again on March 11, 2015. (Mot. to Amend, Ex. C ¶¶ 5-6; Kasollja Decl., Ex. B at p. 2.)[1] Mr. Miller drafted an affidavit from Wise (the "Wise Affidavit") after the February 2015 interview, which Wise appears to have signed on March 11, 2015. (Mot. to Amend, Ex. C ¶ 6 & Ex. 1.)[2] Armed with the Wise Affidavit and tens of thousands of pages of discovery from Chase and other sources, Plaintiffs filed their SAC on March 13, 2015, the key allegations of which tracked the Wise Affidavit nearly verbatim.[3] The SAC contained claims for aiding and abetting and for negligence, but not for civil conspiracy. Upon Chase's motion, the Court dismissed Plaintiffs' claim for negligence and significantly reduced the allegations and theories in support of Plaintiffs' claim for aiding and abetting. (Dkt. No. 364 at pp. 16, 19 (Apr. 26, 2016).)

---

[1] Plaintiffs' counsel states he also interviewed Wise and Jacquline Hoegel, and Jacquline's daughter Kristi Hoegel, on multiple occasions in the spring of 2009, and in July 2014. (Kasollja Decl., Ex. B at p. 2.) Plaintiffs also had the benefit of over 31,000 pages of discovery from Chase as well as materials from the receiver appointed to oversee Millennium Bank prior to filing the SAC. (*See* SAC ¶ 40 (discussing materials received from Millennium Bank receiver).)

[2] Mr. Miller avers that Wise signed the affidavit on March 15, 2015 – *i.e.*, two days after the SAC was filed – but the date handwritten on the Affidavit itself is March 11, 2015 (Mot. to Amend, Ex. C ¶ 6 & Ex. 1 thereto.)

[3] *Compare, e.g.,* Wise Aff. ¶¶ 13 & 14 *with* SAC/TAC ¶ 19; *compare* Wise Aff. ¶ 15 *with* SAC/TAC ¶ 20; *compare* Wise Aff. ¶ 17 *with* SAC/TAC ¶ 22. Similarly, Plaintiffs' allegations that Tamara Williams removed various restraints from the Millennium accounts are also based on hearsay from Wise. (*Compare* Wise Aff. ¶¶ 21-23, 25-26 *with* SAC/TAC ¶¶ 2 6-27, 30-31.)

4813-3729-7470

On December 12, 2016, Plaintiffs moved for leave to file the TAC – which is virtually identical to the SAC – despite the Court's warning that she was "disinclined" to allow further amendment given that the "time for coming up with legal theories in this case has long since passed." (Kasollja Decl., Ex. A at pp. 53-54.)  In support of their Motion, Plaintiffs include an affidavit from Mr. Miller, which in turn attaches the Wise Affidavit.  Mr. Miller asserts in his affidavit that Plaintiffs were prompted to seek to amend the complaint based upon "newly-discovered information, specifically uncovered since the Court's April 26, 2016 Order" denying Chase's motion to dismiss the SAC.[4]  Yet Plaintiffs fail to cite a single piece of information purportedly uncovered since April 2016 which justifies seeking to amend the complaint for a third time eight months later, and in fact admit the civil conspiracy claim "is based on the same facts" as their prior claim for aiding and abetting.  (Mot. to Amend at p. 10.)

## ARGUMENT

### A.    Plaintiffs Have Failed to Demonstrate Good Cause to Amend the Complaint Twenty-One Months After the Court-Imposed Deadline

The Court should deny the Motion to Amend because Plaintiffs have failed to demonstrate good cause justifying their late request.  Although Plaintiffs are correct that such amendments are ordinarily allowed "freely" under Rule 15, this liberal standard is inapplicable where Plaintiffs have exceeded a Court-imposed deadline for submitting an amended complaint.  As such, Plaintiffs must show "good cause" for their failure to include this new claim.  *See, e.g., Eastern Fisheries, Inc. v. Airgas USA, LLC*, 166 F. Supp. 3d 124, 126-127 (D. Mass. 2016) (denying motion to amend for failure to demonstrate good cause because plaintiffs moved to

---

[4] Mr. Miller describes this "newly-discovered information" as comprising the "ESI discovery provided by the Defendant, and other documents produced by [the Millennium Bank Receiver] Richard Roper, and my interviews with various witnesses, including but not limited to Mr. Wise and Ms. Hoegel." (Mot. to Amend, Ex. C ¶ 6.)  The only new information provided to Plaintiffs since April 26, 2016, however, is some Chase ESI discovery produced in August 2016 and the edits purportedly made by Mr. Wise to his affidavit in August 2016.

amend more than thirteen months after deadline to amend pleadings); *Siupa v. Astra Tech, Inc.*, No. 10-cv-10525-TLS, 2013 WL 212613, at *2-3 (D. Mass. Jan. 18, 2013) (denying motion to amend to assert conspiracy claim because plaintiff failed to show good cause for moving over one year after deadline).

Oddly, Plaintiffs assert "the Court has not entered a deadline to amend" the SAC.  (Mot. to Amend at p. 6 n.2.)  The Court, however, did indeed impose such a deadline – for January 9, 2015, which it then extended to March 13, 2015 at Plaintiffs' request.  Plaintiffs have not provided any excuse for seeking to amend their complaint some twenty-one months later. Plaintiffs' contention that the TAC is based on "newly-discovered information" is not supported by any additional allegations in the TAC tied to that information, and Plaintiffs repeatedly admit the TAC "is based on the same facts" as their existing claims (Mot. to Amend at p. 10; *see also id.* at p. 6 ("the conspiracy claim does not expand or otherwise alter the scope of relevant factual discovery").)[5]  Simply put, Plaintiffs lack any cause, let alone good cause, to amend their complaint twenty-one months late.  Accordingly, the Court should deny the Motion to Amend on that basis alone.

### B.     The Proposed Amendment Would Be Futile Because the Civil Conspiracy Claim Fails as a Matter of Law

#### 1.     Standard of Review

Even if Plaintiffs could demonstrate good cause for their untimely request, the Motion to Amend should be denied because the proposed civil conspiracy claim would be futile.  "A court

---

[5] Nor does the Wise Affidavit constitute "newly-discovered information."  It was prepared before Plaintiffs filed their SAC.  The fact that Wise allegedly approved the affidavit's release in August 2016 does not make the information therein "newly-discovered" to Plaintiffs.  Indeed, Plaintiffs' failure to file their Motion to Amend until four months after Wise allegedly authorized the affidavit's release in and of itself constitutes grounds for denying the Motion to Amend.  *See Kay v. New Hampshire Democratic Party*, 821 F.2d 31, 34-35 (1st Cir. 1987) (affirming denial of motion to amend because seeking to amend complaint three months after discovering new information was unjustified).

may deny a motion to amend if amendment would prove futile." *Windham v. JPMorgan Chase Bank, N.A.*, No. 15-cv-12809-FDS, 2016 WL 1642582, at \*2 (D. Mass. Apr. 25, 2016).  Futility means that the proposed new claim would not state a claim upon which relief can be granted. *Id.* When considering futility, the same considerations of Rule 12(b)(6) apply. *Id.*

Where, as here, conspiracy claims are "directly linked to allegations of fraud[, they] are subject to the same heightened pleading requirements as fraud claims." *See Barthelmes v. Kimberly-Clark Corp.*, No. 13-cv-30164-MGM, 2015 WL 1431156, at \*21 (D. Mass. 2015); *see also Mansor v. JPMorgan Chase Bank, N.A.*, No. 12-cv-10544-JGD, 2016 WL 1676482, at \*8 (D. Mass. Apr. 26, 2016) (applying Rule 9(b) to analyze sufficiency of allegations of aiding and abetting fraud).  Accordingly, Plaintiffs' proposed amendment must describe with particularity the "who, what and when" of the alleged conspiracy. *Barthelmes*, 2015 WL 1431156, at \*22.

### 2.     Civil Conspiracy Is Separate and Distinct from Aiding and Abetting

In an attempt to minimize the impact of asserting an entirely new theory and claim in the case nearly five years after filing their original complaint, Plaintiffs incorrectly assert that their proposed civil conspiracy claim is "akin" to their aiding and abetting claim, which the Court has declined to dismiss.  In their mind, the proposed civil conspiracy claim would not be futile because the Court has, in essence, already upheld it.

In so arguing, Plaintiffs misstate the law.  "Massachusetts courts recognize two theories of co-conspirator civil liability":   (1) coercion due to the combination of two or more conspirators; and (2) "an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement." *Cusick v. Carver*, 67 Mass. App. Ct. 1110, at \*5 (2006); *Bartle v. Berry*, 80 Mass. App. Ct. 372, 383-384 (2011).  The former theory is clearly inapplicable here; and the latter theory requires "(1) a tortious act (2) committed in

concert with another and (3) an agreement between the defendant and another toward a common goal furthered by the tortious act." *Needleman v. Clancy*, 74 Mass. App. Ct. 1119, at \*1 (2009).

Rather than addressing these required elements, Plaintiffs incorrectly cite to the Restatement (Second) of Torts § 876 to suggest that they need only prove the same elements for conspiracy as they did for aiding and abetting – *i.e.*, knowledge of the primary actor's malfeasance and substantial assistance therewith (Mot. to Amend at p. 7).[6]  The Restatement, however, says no such thing.  Rather, Section 876 of the Restatement recognizes conspiracy liability (found in part (a)) as separate and distinct from aiding and abetting (found in part (b)). Massachusetts law has long recognized this distinction.  *See, e.g., Payton v. Abbott Labs*., 512 F. Supp. 1031, 1035 (D. Mass. 1981) (discussing difference between conspiracy liability under Restatement § 876(a) and aiding and abetting liability under § 876(b)); *Green v. Parts Distrib. Xpress, Inc.*, No. CIV.A. 10-11959-DJC, 2011 WL 5928580, at \*3 (D. Mass. Nov. 29, 2011) (collecting cases); *Lucas v. Allen*, 1997 Mass. App. Div. 9 (Dist. Ct. 1997) (same).[7]

---

[6] Plaintiffs cherry-pick language from certain cases in a misguided effort to demonstrate that substantial assistance is sufficient to establish a conspiracy.  It is not:  Plaintiffs must affirmatively establish a conspiratorial *agreement* between the primary tortfeasor (here, Millennium Bank) and its co-conspirators.  For example, in *Massachusetts Laborers' Health & Welfare Fund v. Phillip Morris, Inc.*, cited on page 7 of the Motion to Amend, the court expressly analyzed whether there was a common scheme, *i.e.*, an agreement, involving the defendant.  *See* 62 F. Supp. 2d 236, 245 (D. Mass. 1999) (dismissing conspiracy count for failure to state claim).  Similarly, while the court in *Kurker v. Hill* emphasized defendants' substantial assistance, it also discussed that a common tortious plan must exist.  *See* 44 Mass. App. Ct. 184 (1998).  Lastly, contrary to what Plaintiffs imply in the Motion to Amend, *Kyte v. Phillip Morris, Inc.* declined to address the interpretation of § 876(b) of the Restatement.  *See* 408 Mass. 162, 167 (1990) (rejecting conspiracy claim).

[7] Other jurisdictions and commentators also recognize this distinction.  *See, e.g.*, *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998) ("Conspiracy and aiding and abetting are varieties of concerted-action liability: conspiracy requires an agreement to commit a tortious act, *see, e.g.*, . . . *Restatement (Second) of Torts* § 876(a), aiding and abetting requires that the defendant have given "'substantial assistance or encouragement' " to the primary wrongdoer, *Lindsay v. Lockwood*, 163 Misc.2d 228, 232, 625 N.Y.S.2d 393, 396 (1994) (quoting *Restatement (Second) of Torts* § 876(b))."); *In re Evans*, 467 B.R. 399, 409 (Bankr. S.D. Miss. 2011) ("Civil conspiracy is defined in § 876(a), whereas the elements of civil aiding and abetting are laid out in § 876(b) and § 876(c)."); N. Combs, *Civil Aiding and Abetting Liability*, 58 Vand. L. Rev. 241, 254-259 (Jan. 2005) (distinguishing aiding and abetting of Section 876(b) with civil conspiracy, and noting that the two claims are "commonly confused," but are not similar).

4813-3729-7470

This distinction is important.  Not only is there a clear difference between the legal elements of a claim for conspiracy (which requires a conspiratorial agreement) versus those for a claim of aiding and abetting (which does not), but the two claims also differ in the scope of their damages.  Should this Court allow Plaintiffs to proceed with their conspiracy claim, they will undoubtedly later argue that Chase is therefore potentially liable for the entire injury caused as a result of the conspiracy; an aider and abettor, however, can only be liable for the injury *proximately caused* by the substantial assistance it provided to the primary wrongdoer.  *See In re American Principals Holdings, Inc. Securities Litig.*, M.D.L. No. 653, 1987 WL 39746, at *8 (S.D. Cal. July 9, 1987) (describing extent of liability for each claim).

Clearly, Plaintiffs seek to slip the "camel's nose under the tent" by asserting that their new claim is just like their old claim – when it is decidedly not – and then later use the new claim as a wedge to radically expand the scope of damages once inside the tent.  When seen in this more focused light, the Court's allowance of certain aspects of Plaintiffs' aiding and abetting claim does *not* demonstrate the viability of Plaintiffs' proposed civil conspiracy claim, because the two claims differ significantly.  And, Plaintiffs' claim for civil conspiracy fails each element of the actual test for the claim, *i.e.,* that Chase committed (1) a tortious act (2) made in concert with another (3) pursuant to an agreement between the defendant and another toward a common goal furthered by the tortious act.

### 3.    The Proposed Civil Conspiracy Claim Fails as a Matter of Law Because Chase Owed No Duty to the Investors

First, Plaintiffs' proposed civil conspiracy claim fails because Chase owed no independent duty to the Millennium investors.  While Plaintiffs contend, without authority, that the law does not require Chase to owe a separate duty to plaintiff third parties, (Mot. to Amend at p. 7), they are wrong.  As the courts in *Payton* and many other cases have held, a plaintiff must

7

show that the defendant itself engaged in some tortious conduct. *See Payton*, 512 F. Supp. at 1035. One cannot commit a tortious act, however, without owing a duty to the plaintiff. *See* 16 Am. Jur. 2d *Conspiracy* § 55 (2010) ("Tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing a tort *in that he or she owes a duty . . . to the plaintiff and is potentially subject to liability for breach of that duty.*" (emphasis added)); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1135 (C.D. Cal. 2003) (aiding and abetting requires no proof of duty, whereas conspiracy does); 15A C.J.S. *Conspiracy* § 8 (2010) (Civil conspiracy "allows tort recovery only against a party who already owes a duty . . . .").[8]

Here, this Court has already concluded that Chase owed no duty to the Millennium investors. *See Mansor*, 2016 WL 1676482, at *9-10. This Court's conclusion is supported by many other courts who consistently recognize that a bank does not owe a duty to non-customers. *See, e.g.*, *Pereira v. United Jersey Bank, N.A.*, 21 B.R. 644, 674-675 (S.D.N.Y. 1996) (rejecting conspiracy claim because bank owed no duty to non-customer in connection with check-kiting scheme conducted by customer); *Hashimoto*, 264 B.R. at 600 (rejecting conspiracy claim against bank because it owed no independent duty to disclose to borrower that borrower's principal was disposing collateral improperly); *Appley v. West*, No. 84 C 6025, 1985 WL 4884, at *4 (N.D. Ill. Dec. 12, 1985) (holding that civil conspiracy claim was futile because bank owed no duty to non-customer related to improper checks cashed by non-customer's attorney). Absent a duty, therefore, the proposed civil conspiracy claim fails as a matter of law.

---

[8] This concept is echoed in decisions from many other jurisdictions. *See, e.g.*, *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 689 (W.D. Pa. 2013) (dismissing civil conspiracy claim because defendant owed no independent duty to plaintiff); *Hashimoto v. Clark*, 264 B.R. 585, 600 (D. Ariz. 2001) (rejecting civil conspiracy claim absent duty); *Flanders v. Garlock, Inc.*, No. cv-2002-178, 2003 WL 22697241, at *3 (S.D. Ga. Aug. 11, 2003) (concluding plaintiff could not establish conspiracy to defraud because defendant insurer owed no duty to him); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 612 (Tex. 1996) (rejecting conspiracy claim because tire manufacturer had no duty to mechanic killed by exploding tire); *Hunt v. Air Prods & Chems.*, No. 052-9419, 2006 WL 1229082, at *3 (Mo. Cir. Ct. Apr. 20, 2006); *Mosley v. Garlock, Inc.*, No. 2002CV59552, 2006 WL 1229082, at *1 (Ga. Super. Ct. June 25, 2003) ("A cause of action for civil conspiracy does not arise against a defendant who is not bound by the duty violated by the alleged wrongdoing.").

8

4.      **The Proposed Civil Conspiracy Claim Fails Because Plaintiffs Have Failed to Allege a Conspiratorial Agreement With Particularity**

Plaintiffs also fail to allege with particularity any conspiratorial agreement involving Chase.  "A central element of a civil conspiracy is agreement among the actors."  *See Moss v. Camp Pemigewassett, Inc.*, 312 F.3d 503, 512 (1st Cir. 2002); *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F. Supp. 2d 344, 364 (D. Mass. 2002) ("[A] conspiracy requires an agreement to commit a wrongful act . . . .").  In order to agree to a conspiracy, in turn, there must be (a) an actual agreement – not just knowledge – and (b) the conspirator must have unified intent effectuated by a person with authority to enter into such an agreement.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (holding allegations of conspiracy were insufficient as they did not establish actual agreement); *Wells Fargo Bank, N.A. v. Old Republic Title Ins. Co.*, 413 F. App'x 569, 573 (4th Cir. 2011) (affirming dismissal of conspiracy claim because agent lacked authority to enter into agreement); *James R. Snyder Co. v. Edward Rose & Sons, Inc.*, 546 F.2d 206, 209-10 (6th Cir. 1976) (rejecting conspiracy claim because plaintiff did not establish that defendant authorized alleged conspiratorial agreement).

Plaintiffs fail both tests.  First, Plaintiffs fail to specifically allege that *Chase entered into an actual agreement* with the Millennium Bank principals to defraud Millennium's investors.  As this Court will recall, the Court has significantly narrowed the viability of Plaintiffs' factual allegations as a basis for liability against Chase.  Out of the seven factual theories Plaintiffs alleged, the Court accepted only one, *i.e.*, that Chase branch employee Tamara Williams allegedly removed restraints from the Millennium Bank accounts in October 2008 and January and February 2009.  *See Mansor*, 2016 WL 1676482, at *8-9, 11.[9]

---

[9] Plaintiffs still included those other bases in ¶¶ 74(a), (c)-(g) of the TAC.  Those allegations should be stricken, since this Court has concluded they cannot form the basis of Plaintiffs' claim as a matter of law.

Nowhere, however, do Plaintiffs describe an alleged "agreement" with Millennium Bank or even identify its participants, let alone describe when the agreement was formed or detail its implementation.[10]   At most, the proposed third amended complaint alleges that Ms. Williams was allegedly *aware* of the account activities of Millennium Bank and assisted Millennium with them.   (*See* Mot. to Amend, Ex. A ¶¶ 51-52, 56 (alleging knowledge).)   Mere knowledge, however, is not enough to establish an agreement.  *See Briggs v. Boat/U.S., Inc.*, No. 12-cv-11795-DJC, 2014 WL 4662305, at *7 (D. Mass. 2014) (citing cases); *Tutor Perini Corp. v. Bank of Am. Securities LLC*, No. 11-cv-10895-NMG, 2013 WL 5376023, at *25 (D. Mass. Sep. 24, 2013) (holding that bank's knowledge of certain facts and relation with principal wrongdoer did not imply agreement to defraud); *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, No. 1854-cv-01586-BLS-2, 33 Mass. L. Rptr. 267, at *11 (Mass. Super. Ct. Feb. 17, 2016) (holding that complaint failed to state claim for civil conspiracy because it only alleged that defendants knew of conduct at issue).[11]

Second, Plaintiffs fail to allege with particularity that *Chase* (as opposed to one of its employees) intended to form an agreement with Millennium Bank to defraud Millennium's

[10] In fact, the word "agreement" appears only once in the proposed third amended complaint, where Plaintiffs conclusorily attempt to recite the elements of civil conspiracy.   Mere labels and conclusions, however, are insufficient even under the less stringent pleading standard of Rule 8(a), let alone the stringent particularity requirement of Rule 9(b).   *See Ahanotu v. Massachusetts Turnpike Auth.*, 466 F. Supp. 2d 378, 389-390 (D. Mass. 2006); *Byrnes v. Lukes*, No. 2009-cv-1403, 26 Mass. L. Rptr. 354, at *6 (Mass. Super. Ct. Nov. 3, 2009) (dismissing conspiracy claim because the assertion that "defendants acted in concert is merely a label and conclusion" (internal quotations omitted)).

[11] Other cases support this conclusion. Thus, for example, a police officer who was present during other officers' use of excessive force upon a decedent did not conspire in the commission of the tortious conduct because there was no showing of agreement, even though the officer observed the excessive force.  *See Farrah ex rel Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 248 (D. Mass. 2010).  As another illustration, a labor union that worked closely with a municipality with respect to its members' promotions did not agree to conspire with that municipality to deny a promotion to a female member even though the union knew of the municipality's discriminatory employment practices.  *See City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 653 (8th Cir. 1989) (collecting cases for proposition that mere knowledge of wrongful conduct is insufficient to establish agreement). Similarly, a corporation's participation in meetings where other parties discussed concealing adverse health effects associated with manganese exposure did not warrant inference that the corporation agreed to enter a conspiracy concealing such risks.  *See In re Welding Fume Prods. Liab. Litig.*, 526 F. Supp. 2d 775, 803 (N.D. Ohio 2007).

4813-3729-7470

investors.   Plaintiffs do not contend that the one Chase employee who was supposedly knowledgeable about Millennium's scheme actually had the authority to enter an agreement on behalf of Chase.   Rather, Plaintiffs' own allegations suggest a "push-and-pull" between that employee and other, more senior, Chase personnel who were overseeing the Millennium Bank accounts and who initiated "express" account closure processes on February 26, 2009 and ultimately froze the accounts by March 9, 2009.   (*See* SAC, Exs. 9, 25-29.)   And, when those more senior Chase personnel learned more about the account activities in late February 2009, it was *Chase* that actually reported the fraud to the authorities and closed the Millennium Bank accounts.[12]   *See Tutor Perini Corp.*, 2013 WL 5376023, at *25 (explaining that plaintiff's allegations were inconsistent with conspiratorial agreement because defendant was seeking to act in best interests of plaintiff); (*see also* SAC, Ex. 9 (describing freeze and plan to close accounts) and Ex. 24 (referencing coordinated investigation efforts with SEC).)

Although the Court determined that Plaintiffs' claim for aiding and abetting could survive notwithstanding these potential defects, they are fatal to a claim for conspiracy, which requires an actual conspiratorial *agreement*.   Plaintiffs' failure to allege *with particularity* any conspiratorial agreement involving Chase is thus fatal to its proposed claim.   *See Ahanotu*, 466 F. Supp. 2d at 389-390 (dismissing conclusory allegations of conspiracy to retaliate and discriminate because they were not plead with particularity); *Hallal v. Vicis Capital Master Fund Ltd.*, No. 12-cv-10166-NMG, 2013 WL 1192384, at *15 (D. Mass. 2013) (conspiracy claims related to insurance fraud scheme were subject to Rule 9(b)); *Trudel v. SunTrust Bank*, No. 15-cv-1966 (JEB), 2016 WL 7191560, at *16 (D.D.C. Dec. 12, 2016) (dismissing claim that bank

---

[12] Courts consider attachments to a complaint in assessing the sufficiency of a claim.  *See Buba v. Deutsche Bank Nat'l Tr. Co. Americas*, No. 16-cv-10421-PBS, 2016 WL 2626861, at *1 (D. Mass. May 6, 2016).

4813-3729-7470

participated in scheme to steal plaintiff's assets because there were insufficient allegations of agreement, and merely allegations that principal wrongdoers used bank's services to steal assets).

5.    **The Proposed Civil Conspiracy Claim Fails Under the Law of the Case Doctrine**

Plaintiffs' conspiracy claim is further subject to dismissal because Plaintiffs may attempt to use it to impose liability against Chase for actions undertaken prior to Chase's acquisition of WaMu, which they cannot do as a matter of law.

As this Court will recall, it has already ruled that Chase cannot be held liable in connection with any alleged conduct predating the WaMu acquisition, because Plaintiffs did not exhaust their remedies with the Federal Deposit Insurance Corporation as required by FIRREA. *See Mansor*, 2016 WL 1676482, at *6-7, 9, 11.

Plaintiffs' civil conspiracy claim nonetheless may attempt to expose Chase to liability for those very losses which the Court has already ruled cannot be pursued – *i.e.*, those incurred prior to the WaMu acquisition. *See supra,* at 7.  As such, Plaintiffs' claims are barred by the law of the case. *See In re American Principals Holdings, Inc. Securities Litig.*, 1987 WL 39746, at *8 (describing extent of co-conspirator liability); *Naser Jewlers, Inc. v. City of Concord, N.H.*, 538 F.3d 17, 20 (1st Cir. 2008) ("Under th[e] [law of the case] doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (internal quotations omitted)).

12

**6.      Plaintiffs Cannot Rely on the Wise Affidavit, Which Is Inadmissible**

Finally, Plaintiffs rely heavily on the Wise Affidavit to support both the TAC and the SAC:  virtually every key allegation in those pleadings is drawn nearly verbatim from the Wise Affidavit, and Plaintiffs cite no other confidential witnesses in their complaints.  *See* n.3, *infra.* Most disturbing, the Court in turn relied on the very allegations drawn from Wise's Affidavit to deny Chase's motion to dismiss the SAC.  *See Mansor*, 2016 WL 1676482, at *13-15.

Yet the circumstances surrounding the Wise Affidavit are curious at best, and highly suspicious at worst.  First, the affidavit itself is dated March 11, 2015 – two days *before* the filing of the Second Amended Complaint on March 13, 2015 – but Plaintiffs' counsel asserts that it was in fact signed on March 15, 2015 – two days *after* the SAC was filed.  Presumably, Plaintiffs created this time discrepancy in order to support their claim that "new" information has arisen since the filing of the SAC to now support their civil conspiracy claim.

Second, Plaintiffs claim Wise purportedly signed the affidavit in March 2015, but revised the affidavit "in August, 2016" and did not authorize Plaintiffs' counsel to release the document until that time.  (Miller Aff. ¶¶ 6, 7.)  Plaintiffs, however, had already provided Chase with the affidavit *on July 28, 2016* in connection with responding to interrogatory requests.  (*See* Kasollja Decl., Ex. B and Ex. 1 thereto.)  And whether or not Wise had "authorized" the release of the affidavit, it was clearly discoverable in response to Chase's document requests – served in 2014 – seeking "All documents or communications to or from Millennium."  (Kasollja Decl., Ex. C at p. 4.)  Plaintiffs produced documents in response to Chase's request, but waited *over sixteen months* to produce the affidavit.  Nor have Plaintiffs produced any drafts of the affidavit, or any communications between Plaintiffs' counsel, Mr. Wise, or Mr. Wise's counsel before or after the affidavit was drafted, modified, signed or authorized for release.

It is also unclear what authority Mr. Miller had to communicate with Wise at all, and what Mr. Miller told Wise or his counsel in order to induce Wise to sign the affidavit or to authorize its release years after Miller's first interview with Wise.  For example, when Mr. Miller met with Mr. Wise in August of 2016, Mr. Wise had obtained new counsel, Attorney Michael Clough.  (*See* Declaration of Michael Clough ("Clough Decl."), attached as Exhibit E to the Kasollja Decl., ¶ 7.)  According to Attorney Clough, Mr. Miller was aware that Mr. Wise was represented by Mr. Clough in 2016.  (*Id.* ¶ 8.)  Mr. Clough did not authorize Mr. Miller to speak with Mr. Wise.  (*Id.*)  In fact, had Mr. Miller bothered to contact Mr. Clough he would have been informed that, in Mr. Clough's view, a meeting between Mr. Miller and Mr. Wise without Mr. Wise's counsel being present was improper.  (*Id.*)

Separate from the circumstances under which Plaintiffs obtained the Wise Affidavit, its contents are replete with inadmissible hearsay, and is seemingly the first time Wise has ever implicated branch employees at WaMu and Chase as supposedly being intimately complicit in his scheme.  Plaintiffs' counsel indicates he interviewed Wise five times from July 30, 2014 through July 24, 2016.  (*See* Kasollja Decl., Ex. B at p. 2.)  In addition, he interviewed Jacquline and Kristi Hoegel even before that in 2009.  (*Id.*)  Yet in the first iterations of Plaintiffs' claims against Chase – filed in 2009 in Texas and California, and in 2012 in Massachusetts – Plaintiffs focused only on Chase's provision of remote wiring and check deposit services as the primary indicia of Chase's purported complicitness with Millennium.  It appears that nearly six years after Plaintiffs repeatedly interviewed Wise and the Hoegels, Wise suddenly and miraculously proffered a whole slew of new allegations against Chase in an affidavit drafted by Plaintiffs' counsel and signed two days before the deadline for filing the SAC – which Plaintiffs then

immediately incorporated into the SAC in a last-ditch effort to salvage their claims from final dismissal.

Similarly, Wise also appears not to have told government prosecutors about Chase's purported malfeasance, either.  After three years of prosecution and multiple contacts with those prosecutors, in 2012 Wise entered a plea agreement in which he admitted a series of facts to be true.  Notably, those facts contain only one, innocuous reference to WaMu and no references to Chase, Tamara Williams Ressler or Bianca Groves:

> With respect to Counts Fourteen through Sixteen of the Indictment (wire fraud), in furtherance of the above-detailed scheme to defraud investors, co-defendant [Jacquline] Hoegel and I (and others working at our direction) told certain investors to wire funds from their personal accounts in the name of UT of S at Washington Mutual in Las Vegas, Nevada, and Napa California.

(Kasollja Decl., Ex. D at p. 5.)

This is a far cry from the detailed inculpatory statements Wise now alleges that WaMu/Chase employees expressed during Millennium's five-year relationship with the bank. Despite having every opportunity to implicate WaMu, Chase and its employees during the six years in which the matter was investigated by the Department of Justice, the IRS, the SEC, the Receiver, and private plaintiffs' counsel, there is a significant question as to whether Wise ever previously told anyone that WaMu/Chase employees partnered with Millennium Bank to swindle Millennium's investors in the way he now suggests six years later.

The suspiciousness of Wise's affidavit is even further heightened by the fact that Wise had virtually no contact whatsoever with WaMu and Chase branch employees.  Rather, Plaintiffs themselves admit that it was *Kristi Hoegel*, not Wise, who interacted with those employees.  As Plaintiffs themselves recently told the Court, "Kristi is the key here" and "is such an important piece of this case and Jacki Hoegel would say that, Mr. Wise would say that or will say that."

(Kasollja Decl., Ex. A at pp. 17-18.)   (*See also, e.g.,* SAC at ¶¶ 15, 17, 19-24, 26, 30-33 (detailing Kristi's contact with Chase employees).)   Plaintiffs, however, offer no evidence *from Kristi Hoegel* in support of their Motion, nor have they provided any details regarding what information she has provided to them in the past or why she now apparently refuses to speak to Mr. Miller.[13]

Indeed, Wise himself makes clear that all of the allegedly inculpatory statements by WaMu/Chase employees were relayed to him second-hand from Kristi Hoegel.   (Wise Aff. ¶¶ 13, 17, 19-26.)   Nowhere in his affidavit does Wise state that *he* participated in any conversation between Kristi Hoegel and Tamara Williams or Bianca Groves.   These statements are inadmissible hearsay, and are not based on Wise's personal knowledge.   *Setterlund v. Potter*, 597 F. Supp. 2d 167, 170 (D. Mass. 2008); Fed. R. Evid. 803 Adv. Comm. Note (1972); *United States v. Lang*, 589 F.2d 92, 97-98 (2d Cir. 1978).

Finally, the contents of the Wise Affidavit are also objectionable because Chase has not had the opportunity – and may never be allowed the opportunity – to depose Wise.   As this Court is aware, Wise has been criminally prosecuted for his role with Millennium Bank, and is serving 262 months in prison after pleading guilty to eighteen criminal charges, including mail and wire fraud and money laundering.   After obtaining new counsel in February 2016, however, Wise filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255.   (Clough Decl. ¶ 2.)   That issue is still being litigated, and Wise's new counsel has informed Chase's counsel that Wise will assert his rights under the Fifth Amendment so long as that issue is pending.   (*Id.* ¶¶ 5-

---

[13] The extent and substance of the communications between Plaintiffs' counsel and Kristi Hoegel are unclear. Plaintiffs' interrogatory responses state that Plaintiffs' counsel spoke with Kristi Hoegel on May 6, 2009, May 12, 2009, June 24, 2009 and November 16, 2009.  (Kasollja Decl., Ex. B at 2.)  Mr. Miller's recent affidavit, however, states that he has "also attempted to contact Kristi Hoegel, who has repeatedly refused to speak with me."  (Mot. to Amend, Ex. C ¶5.)

Given the suspiciousness surrounding virtually all aspects of the Wise Affidavit, Chase intends to seek discovery of the circumstances surrounding and communications leading up to its drafting, signing, and release.

6.) As such, the Wise Affidavit is subject to challenge under Federal Rule of Evidence 804. *United States v. Williams*, 927 F.2d 95, 99 (2d Cir. 1991).

In short, the highly-questionable circumstances surrounding the Wise Affidavit renders it unreliable, and an incompetent basis upon which to base the SAC and the proposed TAC.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Chase respectfully requests that the Court deny the Motion to Amend.

## REQUEST FOR HEARING

Chase respectfully requests a hearing on the Motion to Amend.


Dated:  December 27, 2016

Respectfully submitted,

JPMORGAN CHASE BANK, N.A.,

By its attorneys,


*/s/ Beth I.Z. Boland*
Beth I.Z. Boland, BBO #553654
Courtney Worcester, BBO #643180
Redi Kasollja, BBO #673557
FOLEY & LARDNER LLP
Boston, MA 02199
(617) 342-4000
bboland@foley.com
cworcester@foley.com
rkasollja@foley.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by electronic and regular mail to those indicated as non-registered participants, if any, on December 27, 2016.

*<u>Redi Kasollja</u>*
Redi Kasollja

4813-3729-7470