UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
EDMUND J. MANSOR and           )
ROBERTA M. MANSOR,             )
                               )
         Plaintiffs,           )     CIVIL ACTION
    v.                         )     NO. 12-10544-JGD
                               )
JPMORGAN CHASE BANK, N.A.,     )
                               )
         Defendant.            )
```

# MEMORANDUM OF DECISION AND
# ORDER ON PLAINTIFFS' MOTION FOR LEAVE
# TO FILE THIRD AMENDED VERIFIED COMPLAINT

September 18, 2017

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiffs, Edmund J. Mansor and Roberta M. Mansor, were investors in what turned out to be a 150 million dollar Ponzi scheme. The scheme was perpetrated by an entity known as Millennium Bank and its principal, William Wise ("Wise"), and was implemented using accounts that had been opened at Washington Mutual Bank ("WaMu"). On September 25, 2008, the United States Office of Thrift Supervision seized WaMu and placed it into receivership with the Federal Deposit Insurance Corporation ("FDIC"). On that same day, the FDIC sold certain of WaMu's assets to the defendant, JPMorgan Chase Bank, N.A. ("JPMorgan" or "Bank"). Those assets included the Millennium-related bank accounts and two WaMu branches where Wise and two of his associates, Jacqueline and Kristi Hoegel (the "Hoegels"), had allegedly been carrying out their fraudulent banking activities with the assistance of WaMu's

employees. In this putative class action, which has been pending since 2012, the Mansors are seeking to hold JPMorgan liable for knowingly assisting Wise and the Hoegels in carrying out their unlawful scheme, and for failing to alert law enforcement and shut down the Millennium-related accounts before the perpetrators could transfer and abscond with additional investor deposits. By their Second Amended Verified Complaint, which is the operative complaint in this action, the Mansors have stated a claim against JPMorgan, on behalf of themselves and all others similarly situated, for aiding and abetting the alleged fraud.

The matter is presently before the court on the "Plaintiffs' Motion for Leave to File Third Amended Verified Complaint." (Docket No. 398). By their motion, the Mansors are seeking leave to amend their complaint, pursuant to Fed. R. Civ. P. 15(a), in order to add a claim against JPMorgan for civil conspiracy. The defendant argues that the motion should be denied on the grounds that the proposed amendment is untimely and fails to state a viable claim for relief. It also argues that the motion should be denied because it seeks to hold JPMorgan liable for conduct that occurred prior to its acquisition of WaMu, and amounts to little more than an attempted "end-run" around the jurisdictional limitations of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(13)(D)(ii) ("FIRREA"). As this court previously ruled in connection with JPMorgan's motions to dismiss the prior and existing complaints, FIRREA deprives this court of subject matter jurisdiction over any claim that relates to the acts or omissions of WaMu rather than the independent, post-acquisition activities of JPMorgan and its employees. Because this court finds that the proposed amendment constitutes strategic pleading that improperly aims to undermine FIRREA's jurisdictional bar, and is untimely in any event, the plaintiffs' motion for leave to amend is DENIED.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

This action was filed against JPMorgan on March 23, 2012. Originally, the named plaintiffs included Geoffrey A. Hollis and Sharon R. Hollis as well as the Mansors. By their initial complaint, the plaintiffs claimed that JPMorgan knowingly aided and abetted the Millennium Bank fraud, aided and abetted the conversion of investor funds by Wise and his associates, and breached fiduciary duties owed to the plaintiffs and members of the putative class. (Docket No. 1 at Counts I-III). The Bank filed a motion to dismiss. (Docket No. 18). However, while that motion was pending, the plaintiffs obtained new information regarding JPMorgan's investigation into and knowledge of activity in the Millennium accounts. This development gave rise to extensive litigation concerning whether the new information was privileged under the Annunzio-Wylie Anti-Money Laundering provisions of the Bank Secrecy Act, and the extent to which the plaintiffs could rely on the new information in connection with this action. It also altered the factual bases for the plaintiffs' claims against JPMorgan. Consequently, this court granted the plaintiffs permission to file an amended complaint, and the Bank agreed to withdraw its motion to dismiss with the understanding that it would have an opportunity to challenge any newly amended complaint on the merits. (See Docket Nos. 32 & 81).

### **Dismissal of the First Amended Complaint**

The plaintiffs filed a First Amended Verified Class Action Complaint ("First Amended Complaint") on January 24, 2014. (Docket No. 203). Therein, the Hollises and the Mansors asserted claims against JPMorgan, on behalf of themselves and all others similarly situated, for aiding and abetting common law fraud, aiding and abetting conversion, deceit and violation of

the California Business and Professions Code §§ 17200, et seq. (Id.). The Bank responded by filing a motion to dismiss and to strike. (Docket No. 210). By its motion, JPMorgan sought to dismiss the First Amended Complaint for lack of subject matter jurisdiction under FIRREA, for failure to comply with the heightened pleading standard established by Fed. R. Civ. P. 9(b), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See Docket Nos. 210 & 214). It also sought to strike the Hollises as class representatives, and to modify the class period in order to exclude any conduct that occurred prior to JPMorgan's acquisition of WaMu. (See id.).

Thereafter, the parties engaged in various disputes relating to discovery and issues of privilege under the Bank Secrecy Act, and on December 10, 2014, this court issued a Memorandum of Decision and Order on Defendant's Motion to Dismiss and to Strike ("2014 Order"). (Docket No. 328). As detailed therein, this court determined that FIRREA deprives courts of subject matter jurisdiction over claims that relate to the acts or omissions of a failed banking institution, but have not been exhausted through the FDIC's administrative claims process. (Id. at 6-7). Because it is undisputed that the plaintiffs in this case did not present any of their claims to the FDIC, and did not exhaust their claims through the FDIC's administrative process, this court ruled that it lacked subject matter jurisdiction over any claims that were based on the actions of WaMu before it was placed into receivership with the FDIC. (Id. at 7). Accordingly, it held that to the extent the First Amended Complaint purported to state a claim based on the pre-purchase activities of WaMu rather than the independent, post-acquisition activities of JPMorgan and its employees, any such claim was subject to FIRREA's jurisdictional bar and would be dismissed. (Id. at 7-9). In connection with its opposition to the present motion to amend, JPMorgan argues that this ruling constitutes the law of the case, and that the

"[p]laintiffs' request to add a conspiracy claim against [the Bank] is little more than an attempted end-run around this Court's prior orders barring claims 'relating to' the actions of WaMu[.]" (Def. Supp. Mem. (Docket No. 417) at 1). For the reasons detailed below, this court finds that FIRREA bars the proposed claim for conspiracy and renders that claim futile.

As part of its ruling on JPMorgan's motion to dismiss the First Amended Complaint, this court found that FIRREA precluded all of the Hollises' claims because there were no allegations indicating that those plaintiffs had funds remaining in any of the Millennium Bank accounts at the time of JPMorgan's acquisition of WaMu, and no allegations suggesting that JPMorgan's conduct, as opposed to WaMu's actions, may have caused any of the losses sustained by the Hollises as a result of the Millennium Bank fraud. (Docket No. 328 at 9-12). However, in light of allegations that the Mansors had invested funds in Millennium Bank after JPMorgan's acquisition, this court found that FIRREA would not bar those plaintiffs from pursuing claims against the defendant. (Id. at 9). This court also determined that the proposed class period set forth in the First Amended Complaint was too extensive because it would encompass individuals and entities that would not be able to show that they were harmed by the conduct of JPMorgan. (Id. at 12). Accordingly, this court ruled in relevant part:

> In light of FIRREA, any class period must include only those individuals and entities who invested in the [Ponzi scheme] or had money remaining in the Millennium accounts on or after September 25, 2008, the date of JPMorgan's acquisition of WaMu. Additionally, the class period should not extend beyond the date when the Millennium-related accounts were frozen or shut down, and investments in the Ponzi scheme ceased. Any amended complaint filed by the plaintiffs should so limit the class period.

(Id. at 12-13). As described below, this court finds that the plaintiffs' proposed conspiracy claim would result in an expansion of the class well beyond the scope of these limitations, and would

5

include investors, such as the Hollises, who had no funds remaining in the Millennium accounts at the time of JPMorgan's acquisition.

Although this court determined that FIRREA's jurisdictional limitations would not preclude claims based solely on JPMorgan's alleged post-purchase misconduct, and that the First Amended Complaint alleged conduct that occurred after JPMorgan's acquisition of WaMu, this court found that those allegations were nevertheless inadequate to state a claim under any Count of the Complaint. (See id. at 13-33). As a result, this court allowed JPMorgan's motion to dismiss the First Amended Complaint in its entirety. However, because this court determined that "the plaintiffs should be given a final opportunity to amend their pleading[,]" the dismissal of the First Amended Complaint was without prejudice to the plaintiffs' ability to file an amended complaint within 30 days of the date of the 2014 Order. (Id. at 33-35).

## JPMorgan's Motion to Dismiss the Second Amended Complaint

The deadline for filing an amended complaint was extended to March 13, 2015 at the plaintiffs' request. (See Docket Nos. 330, 332, 338, 339). On that date, the Mansors filed a Second Amended Verified Complaint ("Second Amended Complaint") in which they asserted claims against JPMorgan, on behalf of themselves and all others similarly situated, for aiding and abetting common law fraud and for negligence with knowledge of fiduciary relationship. (Docket No. 340). The Hollises were no longer named as plaintiffs in the case, and did not purport to assert any claims against the defendant. (See id.). Additionally, the Mansors limited the proposed class to "[a]ll persons or entities in the United States who, between September 25, 2008 and March 25, 2009 purchased or otherwise acquired a purported Certificate of Deposit from or through Millennium" or one of its related entities. (Id. ¶ 57). Thus, they did

6

not purport to include as members of the putative class any individuals or entities who invested in Millennium Bank prior to the date of JPMorgan's acquisition of WaMu.

JPMorgan filed a motion to dismiss the Second Amended Complaint. (See Docket No. 345). As in the case of its motion to dismiss the First Amended Complaint, JPMorgan argued that the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction under FIRREA, for failure to comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See Docket No. 346). It also requested, as an alternative to dismissal, that the court enter an order further limiting the scope of the potential class in order to encompass only those investors who had been defrauded by Millennium Bank and harmed by JPMorgan's actions. (Id.).

On April 26, 2016, this court issued a Memorandum of Decision and Order on Defendant's Motion to Dismiss and to Strike ("2016 Order") in which it dismissed the plaintiffs' claim for negligence, but denied JPMorgan's motion to dismiss the claim for aiding and abetting common law fraud. (Docket No. 364). It also denied JPMorgan's request to alter the scope of the proposed class on the grounds that the request was premature, and that any definition of a class would be addressed at a later point in the proceedings. (Id. at 41). The litigation has continued to move forward based solely on the Mansors' claim that JPMorgan aided and abetted the Millennium Bank Ponzi scheme.

As part of its analysis of JPMorgan's motion to dismiss the Second Amended Complaint, this court again addressed the defendant's argument that FIRREA deprives this court of subject matter jurisdiction over any claims relating to WaMu's conduct prior to JPMorgan's acquisition of its assets in September 2008. (See id. at 14-16). This court ruled, as it did in its 2014 Order,

7

that under FIRREA, federal courts lack subject matter jurisdiction over claims that relate to the acts or omissions of a failed banking institution, but have not been exhausted through the FDIC's administrative claims process, including "claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution rather than the purchaser's independent misconduct." (Id. at 14-15 (quotations, citation and alteration omitted)). It also ruled that because the Mansors did not comply with FIRREA's statutory claims process, "this court lacks jurisdiction over any claims against JPMorgan that relate to any act or omission of WaMu prior to its acquisition by the defendant." (Id. at 15 (quotations and citation omitted)). Accordingly, this court held that to the extent the Mansors' aiding and abetting claim was based upon WaMu's pre-purchase conduct rather than the independent, post-acquisition conduct of JPMorgan, it was "subject to FIRREA's jurisdictional bar, and must be dismissed." (Id. at 15-16).

The Bank did not dispute that the Mansors' claim was based, in part, on conduct that allegedly occurred after the WaMu acquisition, and that FIRREA's jurisdictional limitations did not apply to such conduct. (See id. at 16-17). However, it argued that dismissal was warranted for failure to state a claim under the relevant pleading standards. (Id. at 17). This court determined that the plaintiffs' claim for negligence failed to state a plausible claim for relief, and it dismissed Count II of the Second Amended Complaint on that basis. (See id. at 35-39).

With respect to the plaintiffs' claim for aiding and abetting common law fraud, which was asserted in Count I of the Second Amended Complaint, this court found that the Mansors had satisfied the applicable pleading requirements and stated a viable claim for relief, but only to the extent that their claim was based on the alleged conduct of Tamara Williams ("Williams") in lifting restraints that JPMorgan had placed on the Millennium-related bank accounts during

8

the time period between September 25, 2008, the date of the WaMu acquisition, and March 9, 2009, the date when JPMorgan froze the Millennium accounts. (See id. at 18-34). As alleged in the Second Amended Complaint, Williams had been a manager in one of WaMu's two Napa, California branches, and had been instrumental in enabling Wise and the Hoegels to carry out their fraudulent enterprise. (See 2d Am. Compl. (Docket No. 340) ¶¶ 13-32). After JPMorgan acquired WaMu's assets, which included the Napa branch where Williams worked, Williams allegedly became an employee of JPMorgan. (Id. ¶¶ 28-29). The plaintiffs claimed that Williams, in her new capacity as a JPMorgan employee, knowingly assisted the perpetrators of the fraud in carrying out their unlawful activities. (See id. ¶¶ 31-32). In particular, they alleged that JPMorgan periodically placed restraints on the Millennium Bank accounts due to suspicious activity that its investigative units had detected in the accounts, and that on a number of these occasions, Williams took steps to have the restraints on the accounts removed. (Id. at 30-31). According to the plaintiffs, Williams' efforts to lift the restraints occurred at the request of Kristi Hoegel, and with the knowledge that Wise and the Hoegels were engaged in an illegal enterprise. (Id. at 31-32). Therefore, they claimed that Williams took affirmative steps to insure that the fraud could continue unabated. Because this court found that Williams' alleged actions in lifting restraints in October 2008, January 2009 and February 2009 could arguably be attributed to JPMorgan, and were sufficient to state a claim for aiding and abetting the Millennium Bank scheme, it denied JPMorgan's motion to dismiss Count I of the Second Amended Complaint. (Docket No. 364 at 34).

**Status of the Litigation**

Following the issuance of the 2016 Order, the parties proceeded to engage in extensive discovery relating to the plaintiffs' aiding and abetting claim. (See Docket No. 410). They also pursued third-party discovery relating to that claim. (Id.). On November 17, 2016, more than four and a half years after initiating this action and nearly seven months after this court issued its ruling on the motion to dismiss the Second Amended Complaint, the plaintiffs notified this court of their desire to amend their complaint for a third time. (Docket No. 387 at 2). Specifically, on that date the plaintiffs filed an Updated Status Report in which they stated that they intended

> to amend their complaint one further time by adding new allegations of fact, based on evidence obtained in the latest rounds of discovery, and also to add a single count for 'Civil Conspiracy', a count which does not change any proof requirement in the case, but only a new approach to calculation of damages recoverable.

(Id.).

The defendant opposed the plaintiffs' proposal, and urged the court to deny any effort by the plaintiffs to file an amended complaint. (Docket No. 388). Nevertheless, during a status conference held in open court on November 21, 2016, this court informed the parties that it would consider any motion to amend on the merits. (Declaration of Red Kasollja ("Kasollja Decl.") (Docket No. 404), Ex. A at 53-54). Thus, while this court stated that it was "disinclined to allow a motion to amend" at this stage of the proceedings, and that "the time for coming up with legal theories in this case has long since passed[,]" it ordered the plaintiffs to file any motion to amend the complaint by December 12, 2016. (Id.; Docket No. 392 ¶ 3).

10

As ordered, the plaintiffs filed their instant motion for leave to amend their complaint on December 12, 2016. By their motion, the plaintiffs are seeking leave to file a Third Amended Verified Complaint that includes a claim for civil conspiracy against JPMorgan based on the same facts as those alleged in the Second Amended Complaint. (See Pl. Mot. (Docket No. 398) at Ex. B (illustrating differences between Second Amended Complaint and proposed Third Amended Complaint)). The plaintiffs contend that because the proposed claim is premised upon the same facts that support their aiding and abetting claim, the amended complaint will not expand the scope of discovery, cause undue delay or otherwise prejudice JPMorgan. They further argue that their motion should be allowed because it is the only means by which the members of the putative class may recover all of their alleged losses. (Pl. Mot. at 1, 6). Thus, as the plaintiffs reason:

> [t]he Millennium scheme was enabled by [JPMorgan] through its agreement to aid Wise and his other co-conspirators. Allowing Plaintiffs to prosecute their proposed claim for civil conspiracy would give investors their only realistic opportunity to recover losses suffered as a result of [JPMorgan's] involvement in the fraud, because under Massachusetts law "liability attaches ... whether the conspirator is involved from the beginning or lends aid well after the conspiracy is under way." *Ellis v. Varney*, 2004 WL 574827, at *50 (Mass. Super. 2004) (citing *Potter Press v. C.W. Potter, Inc.*, 303 Mass. 485, 492 (1939)).

Id. at 6-7). Accordingly, the plaintiffs are seeking to expand the scope of their recovery by holding JPMorgan liable for the entire Millennium Bank fraud.

Additional factual details relevant to this court's analysis are described below where appropriate.

## II. ANALYSIS

### A. Standard of Review

The parties disagree on the appropriate standard of review to be applied to the Mansors' motion to amend. The plaintiffs argue that the court should apply the standard established by Fed. R. Civ. P. 15(a). (See Pl. Mot. at 1, 5; Pl. Reply Mem. (Docket No. 409) at 2-3). Under that Rule, leave to amend "is freely given when justice so requires absent an adequate basis to deny amendment such as futility, bad faith, undue delay or a dilatory motive." Transwitch Corp. v. Galazar Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005) (quotations and citations omitted). This standard reflects "the 'liberal' amendment policy underlying Rule 15." O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004). However, JPMorgan contends that the court should apply the "good cause" requirement of Fed. R. Civ. P. 16(b) rather than the "freely given" standard of Rule 15(a) because the plaintiffs filed their motion to amend long after the March 13, 2015 deadline for filing the Second Amended Complaint. (See Def. Opp. Mem. (Docket No. 403) at 2-4). "Rule 16(b) requires that the district court enter a scheduling order setting certain deadlines, including a deadline for the parties to amend the pleadings." Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (citing Fed. R. Civ. P. 16(b)(1)). It also provides that "[t]hose deadlines may be modified 'only for good cause and with the judge's consent.'" Id. (quoting Fed. R. Civ. P. 16(b)(4)). Consequently, First Circuit "case law clearly establishes that Rule 16(b)'s 'good cause' standard, rather than Rule 15(a)'s freely given standard, governs motions to amend filed after the scheduling order deadlines have passed." Id. (quotations, citations and punctuation omitted).

12

The distinction between the two Rules may be significant. As the First Circuit has explained:

> Unlike Rule 15(a)'s "freely given" standard, which focuses mostly on the bad faith of the moving party and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard emphasizes the diligence of the party seeking the amendment. Prejudice to the opposing party remains relevant but is not the dominant criterion. "[I]ndifference" by the moving party "seal[s] off this avenue of relief" irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.

O'Connell 357 F.3d at 155 (internal citations omitted). "Regardless of the context, [however,] the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004).

As stated in the 2014 Order, this court contemplated that the plaintiffs would have one "final opportunity to amend their pleading" following the dismissal of their First Amended Complaint. (See Docket No. 328 at 33-35). The deadline for doing so occurred on March 13, 2015, twenty-one months prior to the date when the plaintiffs filed their instant motion. (See Docket Nos. 338, 339). The Bank argues that the plaintiffs' present effort to amend their complaint for a third time, so long after the expiration of the March 13, 2015 deadline, warrants the application of the more stringent, "good cause" standard to the plaintiffs' motion to amend. (Def. Opp. Mem. at 3-4). However, as described above, in November 2016, this court gave the plaintiffs express permission to file their present motion, and set a deadline of December 12, 2016 for doing so. (Kasollja Decl., Ex. A at 53-54; Docket No. 392 ¶ 3). Because the plaintiffs complied with this deadline, they contend that Rule 15(a) should govern their

13

present motion. (Pl. Reply Mem. at 1-2). This court finds that it is not necessary to finally resolve this issue because the motion would be denied under either standard. Therefore, for purposes of this analysis, this court will rely on the more liberal amendment standard of Rule 15(a).

**B.     Futility**

The defendant contends that the motion to amend should be denied not only because it is untimely, but also because it is futile. (Def. Opp. Mem. at 1). Specifically, JPMorgan argues that the plaintiffs have failed "to cite a single additional fact they have learned since filing the Second Amended Complaint" or to present any other reasons to justify the delay in filing their motion. (Id. at 1, 3). It further argues that the proposed conspiracy claim not only fails to state a viable claim for relief, but also "would sweep in conduct predating [the Bank's] September 25, 2008 acquisition of [WaMu], which this Court already ruled would be barred under [FIRREA]." (Id. at 1). Because the Bank's reliance on FIRREA presents a threshold question as to whether this court would have subject matter jurisdiction over the conspiracy claim, it is appropriate to address that issue first.

As this court has ruled in both its 2014 Order and its 2016 Order, under FIRREA federal courts lack subject matter jurisdiction over claims that relate to the acts or omissions of a failed banking institution, but have not been exhausted through the FDIC's administrative claims process. (Docket No. 328 at 6-7; Docket No. 364 at 14-15 (and cases cited)). This includes claims asserted against a purchasing bank that are based on the conduct of the failed institution rather than the independent misconduct of the purchaser. (Docket No. 328 at 7-8; Docket No. 364 at 14-15). Because it is undisputed that the Mansors did not exhaust the administrative

14

procedures required by FIRREA, this court "lacks jurisdiction over any claims against JPMorgan that relate to any act or omission of WaMu prior to its acquisition by the defendant" rather than JPMorgan's post-purchase misconduct. (See Docket No. 364 at 15-16 (quotations and citations omitted); see also Docket No. 328 at 8-9).

The plaintiffs argue that "[JPMorgan's] independent misconduct, not the pre-acquisition conduct of WaMu, forms the basis of Plaintiffs' proposed civil conspiracy claim" because it is premised upon Williams' alleged actions in lifting restraints on the Millennium accounts during the time period when she was an employee of JPMorgan. (Pl. Reply Mem. at 8). Thus, according to the plaintiffs, "[the defendant's] own wrongdoing coupled with proof of its shar[ing] the objective of Wise and the Hoegels to defraud and convert the funds of Millennium investors are what would make the bank liable for civil conspiracy." (Pl. Supp. Mem. (Docket No. 416) at 3 (quotations and citation omitted)). Therefore, they contend that FIRREA's jurisdictional limitations are inapplicable here. (See id. at 4-5).

This court finds that the plaintiffs' argument ignores the functional nature of the FIRREA analysis, as well as the true nature of their proposed claim. As a number of Circuit Courts have recognized, "plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically." Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1214 (9th Cir. 2012) (quoting Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1144 (D.C. Cir. 2011)). See also Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 21 (1st Cir. 2013) (ruling that plaintiffs could not avoid the reality of their claims through "strategic pleading[,]" and that those claims were barred by FIRREA); Farnik v. FDIC, 707 F.3d 717, 723 (7th Cir. 2013) (noting that "strategic case captioning would allow creditors to completely bypass FIRREA's administrative process," and

15

holding "that the FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing"). Therefore, in analyzing whether FIRREA's jurisdictional bar applies to a plaintiff's claim, courts must "focus[ ] on the substance of a claim rather than its form." Acosta-Ramirez, 712 F.3d at 20-21 (quoting Farnik, 707 F.3d at 722). "Where a claim is *functionally*, albeit not *formally* against a [failed banking institution], it is a 'claim' within the meaning of FIRREA's administrative claims process." Benson, 673 F.3d at 1214 (quoting Am. Nat'l Ins. Co., 642 F.3d at 1144). This court finds that the proposed conspiracy claim in this case is one that, in reality, targets the actions of WaMu and constitutes a claim within the meaning of FIRREA.

The plaintiffs readily admit that the purpose of their conspiracy claim is to hold JPMorgan liable, as a co-conspirator with Wise and the Hoegels, "for all damages caused by the [Millennium Bank] conspiracy, essentially imposing joint and several liability upon the co-conspirators[.]" (Pl. Supp. Mem. at 1). In other words, the plaintiffs are looking to recover damages from JPMorgan for all losses sustained by the Mansors and members of the putative class as a result of the entire Ponzi scheme. This court finds that this amounts to strategic pleading, which is improperly aimed at avoiding FIRREA's administrative process.

Although the plaintiffs insist that their proposed claim is predicated solely upon JPMorgan's own post-acquisition misconduct, they cannot escape the fact that it relates to WaMu's conduct. As described in detail in this court's 2016 Order, the plaintiffs claim that the alleged Ponzi scheme was initiated at WaMu, was carried out with the knowledge and assistance of WaMu employees, and was ongoing at the time JPMorgan acquired WaMu's assets. (See Docket No. 364 at 5-10). Furthermore, Williams' relationship with Wise and the

16

Hoegels, and her alleged involvement in any conspiracy, was developed while she was working for WaMu, well before JPMorgan appeared on the scene. (See id. at 6-9). By seeking to hold JPMorgan jointly and severally liable for what was in reality the continuation of an alleged conspiracy that was created under WaMu and substantially carried out through WaMu, the plaintiffs are "*functionally*, albeit not *formally*" attempting to assert a claim against a failed bank. See Benson, 673 F.3d at 1215 (quoting Am. Nat'l Ins. Co., 642 F.3d at 1144). Under FIRREA, "[t]he plaintiffs may not avoid that reality [through] strategic pleading." Acosta-Ramirez, 712 F.3d at 21. Accordingly, the proposed conspiracy claim is jurisdictionally barred and the motion to amend must be denied as futile.[1]

### C. Untimeliness

Even if the proposed claim were not futile, the motion to amend would still be denied because it is untimely. This case has been pending since 2012, and the plaintiffs have amended their complaint on two prior occasions. Moreover, there is no question that the plaintiffs delayed in filing their instant motion to amend. As the plaintiffs' own pleadings illustrate, the proposed conspiracy claim is based on the same alleged facts as those that support the existing claim for aiding and abetting common law fraud. (See Pl. Mot., Ex. B). Accordingly, there is no apparent reason why the plaintiffs failed to include their conspiracy claim in their Second Amended Complaint. Nor is there any reason why the plaintiffs waited until November 2016, nearly seven months after this court issued the 2016 Order on the motion to dismiss the Second Amended Complaint and after the parties had conducted a considerable amount of

---

[1] Because this court finds that FIRREA bars the conspiracy claim, it is not necessary to address JPMorgan's argument that the motion to amend is futile because the plaintiffs have failed to plead a viable claim for relief under the relevant pleadings standards. (See Def. Opp. Mem. at 4-12).

17

discovery relating to the plaintiffs' aiding and abetting claim, to present their new legal theory. "Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend." Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 20 (1st Cir. 2013).

The Mansors' effort to justify the delay in asserting a conspiracy claim is entirely unpersuasive. Thus, the plaintiffs contend that after this court issued the 2016 Order, they uncovered additional information supporting the existence of a conspiracy. (See Pl. Mot., Ex. C ¶¶ 8-9). They also contend that after the court issued its 2016 Order, Wise authorized plaintiffs' counsel to release an affidavit containing information relating to the alleged conspiracy. (See id. ¶¶ 6-7, 9). However, plaintiffs' counsel concedes that he obtained the information used to prepare Wise's affidavit during a meeting that was held in February 2015. (Id. ¶ 6). Therefore, the plaintiffs were in possession of that information prior to filing the Second Amended Complaint on March 13, 2015. (See Docket No. 340). In any event, the lack of any substantive differences between the facts alleged in the Second Amended Complaint and the facts alleged in the proposed Third Amended Complaint belie the plaintiffs' assertion that they uncovered new evidence and could not have brought a conspiracy claim earlier. The plaintiffs' undue delay in filing their motion to amend warrants the denial of the motion.

This court also finds that the motion should be denied because the addition of a new claim at this juncture in the case would cause prejudice to the defendant. As described above, this matter has proceeded under an aiding and abetting theory since its inception. As a result, JPMorgan's potential liability has been limited to losses that occurred after it purchased WaMu's assets from the FDIC. (See Docket No. 328 at 8-9). Indeed, this court has ruled that

18

"any class period must include only those individuals and entities who invested in the [Ponzi scheme] or had money remaining in the Millennium accounts on or after September 25, 2008, the date of JPMorgan's acquisition of WaMu." (Id. at 12). The addition of a conspiracy claim that seeks to hold JPMorgan jointly and severally liable for the entire fraudulent scheme would broaden the scope of the putative class to include all individuals and entities (such as the Hollises) who invested in the Ponzi scheme prior to September 2008, and encompass all losses that occurred during the entire time period when WaMu held the Millennium accounts. It would also raise the financial stakes of the lawsuit by over $100 million. (See Def. Supp. Mem. at 1 (arguing that "[p]laintiffs essentially admit they are looking to bootstrap a putative $15 million claim into a $150 million claim by making [JPMorgan] liable for *the entire Ponzi scheme*")). The First Circuit has emphasized that motions to amend are especially disfavored where their "timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . . .'" Steir, 383 F.3d at 12 (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)). Here, there can be little question that the addition of a conspiracy claim would prejudice JPMorgan "by injecting [an entire] new theory of relief into the litigation[.]" See id.

Finally, this court finds that allowance of the motion would further delay the resolution of this protracted litigation. Pursuant to the current pretrial schedule, fact discovery is expected to be completed by the end of this month, and any request for class certification must be filed by November 21, 2017. (See Docket Nos. 470, 471). However, JPMorgan has indicated that it would likely seek additional discovery if the plaintiffs' motion is granted including

19

discovery into "Millennium's malfeasance prior to its opening of the WaMu bank accounts in 2004" and "discovery into investor funds deposited into other banks, which this Court has already ruled off-limits." (Def. Supp. Mem. at 11). There is little if any likelihood that the parties would be able to comply with the current deadlines if the motion were allowed. Moreover, given the often contentious and hard fought nature of this case, the introduction of a conspiracy claim would almost certainly result in additional motion practice that would further delay resolution of this matter. Accordingly, this court concludes that the plaintiffs' motion to amend should be denied for these reasons as well.

## IV. **CONCLUSION**

For all the reasons detailed herein, the "Plaintiffs' Motion for Leave to File Third Amended Verified Complaint" (Docket No. 398) is hereby DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge